Argued 31 July, decided 11 Sept. 1906 ; rehearing denied 28 January, 1907.

## GUILLAUME *v.* K. S. D. LAND CO.

86 Pac. 883, 88 Pac. 586.

SPECIFIC PERFORMANCE—NECESSITY AND SUFFICIENCY OF TENDER.

1. Where the vendee in a contract for the sale of land has deposited in court the money tendered, his withdrawal of the same before trial precludes a decree for specific performance in his favor, unless some act of the vendor relieves the vendee from the necessity of a tender.

DENIAL OF LIABILITY AS AFFECTING NEED OF TENDER.

2. Where the vendee in a contract for the sale of land has the right to pay any part of the consideration in commissions for selling other lands of the vendor, the vendor's denial of liability for the commissions earned by the vendee is equivalent to a refusal to execute a deed for the land specified, and hence the vendee is not obliged to make a tender of the balance as a condition precedent to a suit for specific performance.

CORPORATIONS—AUTHORITY OF DIRECTOR OR STOCKHOLDER AS AGENT.

3. The act or declaration of a director or stockholder of a corporation,

acting in his personal capacity, does not bind the corporation, unless he is the agent of the corporation as to that matter, or his conduct is ratified.

CORPORATE AGENCY—CONDUCT AMOUNTING TO RATIFICATION.

4. The conduct of a corporation in refusing to pay the claim of one with whom it had a contract and defending a suit brought to enforce such claim is a ratification of the act of one of its stockholders or directors in denying liability on the contract.

VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT TO SELL.

5. A written proposal from a corporation owning lands to plaintiff, to sell him a certain block for a specified sum, to be paid for in cash or in commissions "on sales" effected by plaintiff, "it is all to be paid for in either cash or commissions within three years from the date hereof, * * you to obtain purchasers for such of our lands as we place at your disposal * * this agreement to sell to others, except yourself, to remain in force for 12 months," is unambiguous, and not susceptible of the construction that plaintiff was required to sell all the corporation's land in order to entitle him to a deed of the block in question.

SPECIFIC PERFORMANCE—SUFFICIENCY OF DESCRIPTION IN CONTRACT.

6. A contract for the sale of land referring to it as a certain block, as designated on a map on file in the vendor's office, and possession being delivered to the purchaser, is sufficiently definite to enable a surveyor to locate on the ground the block as surveyed, though the plat was not recorded, and hence is sufficient to sustain a decree for specific performance.

COSTS AND DISBURSEMENTS IN EQUITY.

7. Under Section 566, B. & C. Comp., the costs and disbursements in an equity suit may be assessed against defendant in all the courts through which the case has passed.

From Malheur: GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by L. F. Guillaume against the K. S. D. Fruit Land Company to enforce the specific performance of a contract to convey real property. The complaint alleges in effect, (1) that at all times mentioned therein the defendant was and now is a private corporation; (2) that, being the owner in fee of a large body of land in township 19 south, range 47 east of the Willamette Meridian, the defendant caused it to be surveyed into blocks of 40 acres each, which "were duly numbered and designated on an official map which is and at all times has been by said corporation defendant recognized as the official map of its holdings in Malheur County, State of Oregon"; (3) that on January 15, 1900, the defendant sold one of these subdivisions to the plaintiff, who accepted its written offer which was addressed to him, setting out a copy thereof, from which

(48th Or.—26)

the following extracts are taken, as being the only provisions thought to be applicable herein, to wit:

"The undersigned hereby propose to sell you a block of their land at Arcadia, designated on a map as number 'sixteen (16)' which said map is now on file at our office in Arcadia, and is recognized by us as the official and true map of our holdings, for the sum of sixteen hundred dollars ($1600.00), to be paid for as follows, to wit: First, in commissions amounting to ten (10) per cent on sales effected by you; secondly, in cash, should the aforesaid commissions fall short of paying for the land. It is all to be paid for in either cash or commissions within three years from date hereof, it being understood that you, in this, agree to obtain purchasers for our company for the sale of such of our lands as we place at your disposal. * * This agreement to sell to others, except yourself, to remain in force for 12 months."

It is further averred that the plaintiff duly performed his part of the contract and effected sales of such land, aggregating $3,860, for which he is entitled to a commission of $386, to be credited on the purchase of block No. 16; that on January 14, 1903, he tendered the remainder of the consideration for such block to the defendant and requested a conveyance thereof, but it refused to comply therewith, whereupon the money so due was deposited in court for it, to be paid on the execution of a good and sufficient deed for the premises; and that plaintiff has no plain, speedy or adequate remedy at law.

The answer specifically denies each allegation of the complaint, except paragraphs 1, 2 and 3 thereof, and avers that the plaintiff did not obtain purchasers for all the land placed at his disposal, and that he did not try to sell all such lands. The testimony was taken before referees, and, having been submitted to the court, findings of fact were made as stated in the complaint, except that on January 14, 1903, the plaintiff called at the defendant's office, in the absence of its manager, and tendered to its employes the sum of $1,240, requesting the execution of a deed to the premises; that when this suit was instituted the plaintiff left with the clerk of the court a certificate of deposit for $1,240, which was designed as a tender of the remainder of the purchase price of block No. 16, but

that such voucher was soon thereafter withdrawn, and at the time of the trial no money was on deposit in the court for such purpose.

Further findings were made as follows:

"(9) That the lands referred to in said agreement are described as being 'block 16' of defendant's lands at Arcadia, as numbered on a private unrecorded map referred to in the complaint, and as remaining in the possession of defendant as vendor.

"(10) That from the description referred to in said agreement, it is impossible to determine the location of said lands, as the same is indefinite and uncertain, and not sufficiently described to enable the court to enter a decree herein with sufficient certainty to in any manner settle the rights between the parties hereto regarding the lands claimed in the complaint."

Based on these findings, the suit was dismissed and plaintiff appeals.                                             REVERSED.

For appellant there was a brief over the names of *Edmund Mills Wolfe* and *Richard Cunningham,* with an oral argument by *Mr. Wolfe.*

For respondent there was a brief over the names of *William Rufus King* and *William H. Brooke,* with an oral argument by *Mr. King.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. An examination of the transcript shows that the court's findings in respect to the alleged tender of the remainder of the purchase price of the block and the withdrawal of the certificate of deposit are fully supported by the testimony. Unless by some act of the defendant the plaintiff was relieved from the necessity of tendering the remainder of the purchase price, his failure to permit the certificate of deposit to remain with the clerk of the court, assuming it was sufficient for that purpose, must defeat his right to the relief sought.

2. The testimony descloses that, prior to the expiration of the three years specified in the agreement, the plaintiff received from one of the directors of the defendant a letter in answer to a request for a settlement of his commissions, as follows:

"Ogden, Utah, Jan. 7, 1903.

Rev. L. F. Guillaume,
        Ontario, Or.:

Dear Sir:—

You are not entitled to anything, as you did not fulfill your part of the contract.

        Yours truly,    K. S. & D. CO.

We, on the contrary, have a claim on you because of your abrupt departure."

F. J. Kiesel, as defendant's witness, testified on cross-examination that he wrote this letter, but that on reflection he concluded he ought not to have signed the defendant's name thereto, saying he was only a director, and not an officer, of the corporation. As the commissions earned by the plaintiff formed a part of the consideration for the purchase of the block of land, a denial of any sum due him on account thereof is tantamount to a refusal to execute to him a deed to the premises at the price specified; and, this being so, the question to be considered is whether or not the defendant was bound by the statements contained in such letter.

3. A corporation is represented by its officers, and a director thereof in his individual right possesses no authority to act for it unless he has been appointed its agent, or his acts and declarations have been ratified by it: *Hartford Bank* v. *Hart,* 3 Day (Conn.) 491 (3 Am. Dec. 274).

4. As the directors of a corporation, when duly assembled, may constitute one of their number an agent of the artificial being to transact a particular part of the business in which it is engaged, so, too, they can ratify any act of one of their number that they could have authorized in the first instance: *Merrick* v. *Reynolds Engine & G. Co.,* 101 Mass. 381; *Lyndon Mill Co.* v. *Lyndon Literary & B. Inst.,* 63 Vt. 581 (22 Atl. 575, 25 Am. St. Rep. 783). The transcript does not show that Kiesel was appointed the defendant's agent, nor does it appear that any testimony was produced directly proving that the declarations contained in his letter were ratified. The defendant evidently derived a benefit by the sales of its land which the plaintiff negotiated, and it was liable to him for the com-

missions which he thereby earned. The corporation had knowledge of the plaintiff's demands when a copy of the complaint was served, and thereafter retaining the commissions and setting up the defense interposed were equivalent to a ratification of Kisel's declaration, as much so as if it had given the notice that it did not owe the plaintiff anything. The rules of law do not require the performance of vain things, and as the defendant would not have accepted the remainder of the purchase price of the block as a consideration for the execution of the deed, the plaintiff was not obliged to make a tender thereof as a condition precedent to his right to a decree for specific performance: Pomeroy, Contracts, § 326; Waterman, Spec. Perf. § 446.

5. The cause having been tried before a referee, testimony was introduced, over objection and exception, to the effect that the plaintiff was required to sell all the defendant's land, about 1,200 acres, before he was entitled to a deed to block No. 16. An examination of the parts of the agreement hereinbefore set out will show that no ambiguity exists therein in relation to this question, and that the omission of the word "all" preceding the phrase "such of our lands as we place at your disposal," shows that the contract is not susceptible to the construction sought to be placed upon it. The defendant's written proposal, when accepted by the plaintiff, gave him 12 months in which to secure purchasers for such lands for which he was to receive 10 per cent of the sums so secured, but he was to have three years in which to pay the remainder of the purchase price of the block selected. There was no ambiguity in the contract in respect to the consideration which the plaintiff was to pay for the block specified, nor any stipulation that he would secure purchasers for all the land that the defendant desired to sell, and any testimony to the contrary was inadmissible as tending to vary the terms of the written agreement.

6. What has been said in relation to the plaintiff's obligation to obtain purchasers for the defendant's land will apply to the averment in the answer that he did not try to sell all such

real property. Reading the contract in connection with the admissions of the answer, it will be seen that block No. 16 of the defendant's land in Arcadia, as designated on a map on file in its office at that place, and recognized by it as the offi-· cial and true map of its holdings, is situated in township 19 south, range 47 east of the Willamette Meridian in Malheur County, Oregon, and, by the survey thereof, contains 40 acres. These facts having been admitted by the pleadings, very little testimony was offered in relation to the identity of the land specified. The plaintiff as a witness in his own behalf, however, stated that possession of the block was given to him, and that he thereafter leased the premises to the manager of the defendant corporation. The rule is quite general that if the description clause of real property as stated in a written instrument is vague, the construction of the language used that has been placed upon it by the parties may be shown by parol evidence as tending to identify the premises intended: *Lanman* v. *Crooker,* 97 Ind. 163 (49 Am. Rep. 437) ; *Truett* v. *Adams,* 66 Cal. 218 (5 Pac. 96) ; *Lovejoy* v. *Lovett,* 124 Mass. 270. Thus, when possession of real property is taken pursuant to an agreement of the vendor, the occupation of the premises by the vendee may render certain what otherwise would have. been a vague description of the land intended by the parties: *Richards* v. *Snider,* 11 Or. 197 (3 Pac. 177) ; *Simpson* v. *Blaisdell,* 85 Me. 199 (27 Atl. 101, 35 Am. St. Rep. 348) ; *Ray* v. *Pease,* 95 Ga. 153 (22 S. E. 190).

It is admitted by the defendant's counsel that when a map delineating a survey of real property is referred to in a deed, such plat is to be considered as a part of the instrument, and to be construed in connection therewith; but it is contended that the reference must be to a public chart, and as the allusion in the case at bar is to a private map in the office of the defendant corporation, the rule adverted to is not applicable. In *Noonan* v. *Lee,* 67 U. S. (2 Black) 499 (17 L. Ed. 278), reference was made in a deed to a plat that was so defective as not entitled to be recorded. In deciding the case, Mr. Justice

SWAYNE says: "The proof in the case shows clearly where the plat was in fact located. As regards the statute, the plat was fatally ·defective, and afforded no warrant to the recording officer for putting it on record. Nevertheless, its being there was a fact, and whether there or elsewhere, the reference to it in a deed for the purpose of fixing a boundary is sufficient." In *Young* v. *Cosgrove,* 83 Iowa 632 (49 N. W. 1040), in referring to an invalid map alluded to in a deed, the court says: "The holder of the title to the land recognized the plat by following its descriptions, and thus, as between himself and his grantee, adopted it. Surely, when an instrument is referred to to designate land, or give description thereof, we are not required to hold such an instrument valid and regular in order to accept the description it gives. A void deed or a void plat could well describe lands which could be properly and conveniently referred to for such description in deeds conveying them." In *Johnstone* v. *Scott,* 11 Mich. 232, it was held that deeds of town lots were valid, notwithstanding the failure of the proprietors to acknowledge and record the town plat. In deciding that case, Mr. Justice CHRISTIANCY says: "None of our statutes in reference to town plats go so far as to render deeds of conveyance between individuals void, because made by reference to an unacknowledged or unrecorded plat. But any such plat, or any other map or plat, whether to be found in a public office or in the possession of any person, may still be used for the purpose of identifying the land intended to be conveyed, though no description be given except by reference to such plat by which the property conveyed could be ascertained."

We think there can be no doubt that the reference to the defendant's official map on file in its office at Arcadia, and proof of the identity of the land, the possession of which was delivered to the plaintiff, afford sufficient data to enable a competent surveyor to locate block No. 16 as it was surveyed on the ground, and this being so, the decree is reversed, and one will be entered here as prayed for in the complaint, provided that the plaintiff deposit with the clerk of the lower court, within 30 days from the entry of the mandate therein, the sum

of $1,214, the remainder of the purchase price due the defendant.

7. The plaintiff will recover his costs and disbursements in both courts.                                              REVERSED.

Decided 29 January, 1907.

ON MOTION FOR REHEARING.

MR. JUSTICE MOORE delivered the opinion of the court.

In a petition for a rehearing, filed herein, attention is directed to a misstatement of fact in the former opinion to the effect that the plaintiff received a letter, setting out a copy thereof, from a director of the corporation, instead of from a stockholder thereof. No distinction, however, was made between a director and a stockholder as to the right of either to bind a corporation by his unauthorized act, and any inadvertence in the use of the word mentioned was immaterial. The only legal principle involved of which we entertained a doubt, was the right of F. J. Kiesel, a stockholder of the defendant, to bind the corporation by a letter purporting to have been written by it, denying all liability for commissions alleged to have been earned by the plaintiff, thereby excusing the latter from making a tender of the sum of money admitted to be due the defendant as the remainder of the consideration for the land. The plaintiff, as a witness in his own behalf, testified that the contract whereby the real property in question was stipulated to be sold and conveyed to him, though signed by the president and secretary of the defendant, was dictated by Kiesel, and that in order to secure a settlement of his demand he wrote to such stockholder, because he considered him as the principal interested in the company. As a witness for the defendant, Kiesel testified that he never was manager of the company, but, as he owned one third of the stock, he was consulted at the time the contract was drawn up, because he was so heavily interested in the corporation. We think it is fairly inferable from the testimony that Kiesel was the agent of, and authorized to act for, the corporation in writing the letter to plaintiff, upon the faith of which he acted; and, this being so, the petition is denied.

REVERSED: REHEARING DENIED.